IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                                |   |                              |
|--------------------------------|---|------------------------------|
| EDNA MARY LARSON,              | * |                              |
| Plaintiff,                     | * |                              |
| v.                             | * | Civil Action No. PX-18-0780  |
| NATIONSTAR MORTGAGE, LLC, *et al.* | * |                              |
| Defendants.                    | * |                              |

******

**MEMORANDUM OPINION**

Pending before the Court is Defendants Diane S. Rosenberg and Rosenberg & Associates, LLC's motion to dismiss the Complaint filed by Plaintiff Edna Marie Larson ("Larson"). ECF No. 12. Also pending is Defendant Nationstar Mortgage LLC, d/b/a Champion Mortgage Company of Texas' ("Nationstar") motion to dismiss Larson's Amended Complaint. ECF No. 27. Larson has opposed both motions to dismiss. ECF Nos. 18 and 29. Also pending are Larson's motions for leave to file an Amended Complaint (to which Nationstar has filed its motion to dismiss), ECF No. 24, and for leave to file a surreply. ECF No. 33. The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, Larson's motion to file an Amended Complaint is GRANTED, the motion to file a surreply is DENIED and Defendants' motions to dismiss are GRANTED.

## I. Background[1]

This case arises out of a reverse mortgage obtained by Larson on July 6, 2009, for the property at 3973 Wendy Lane, Silver Spring, Maryland ("the Property"). ECF No. 27-2. On May 6, 2015, the loan was assigned to Nationstar, ECF No. 27-3, the current holder of the reverse mortgage. ECF No. 2-21. On March 31, 2016, Diane S. Rosenberg and Rosenberg & Associates (collectively, "Rosenberg"), as substitute trustees, filed a foreclosure action against the Property in the Circuit Court for Montgomery County. ECF No. 2-2. On May 23, 3016, Rosenberg dismissed the foreclosure case. *Id.* The Property was not sold, and Larson continues to live there.

On January 19, 2018, Larson filed suit in the Circuit Court for Montgomery County, asserting a variety of statutory and common law claims stemming from the prior foreclosure proceedings and requesting millions of dollars in damages. ECF No. 2. Nationstar removed the case to this Court, ECF No. 1, to which Rosenberg consented. ECF No. 10. Thereafter, Defendants moved to dismiss the Complaint. ECF Nos. 12, 14. Larson responded and also moved for leave to file an Amended Complaint. ECF No. 24. Nationstar then moved to dismiss the pending Amended Complaint, which Larson opposed. ECF Nos. 27 & 29. Larson also moved for leave to file a surreply. ECF No. 33.

Despite the somewhat tangled procedural history, the substance of the initial and Amended Complaints is the same, save for Plaintiff's withdrawal of Count II, "Wrongful Future Foreclosure." *See* ECF 24-6 (manually redlined version of Amended Complaint). The Court will therefore grant Larson's motion to amend and treat the motions to dismiss as challenging the sufficiency of the Amended Complaint.

---

[1] In considering Defendants' motions to dismiss, the Court relies upon the facts alleged in the Complaint and materials attached thereto, as well as matters of public record. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). All facts are viewed in the light most favorable to Plaintiff.

## II. Standard of Review

When reviewing a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

## III. Analysis

Nationstar argues that Larson's seventy-eight page Amended Complaint should be dismissed under Federal Rules of Civil Procedure 8(a) and 12(b)(6) because it is "so lengthy, confusing, and rambling that it is . . . impossible to answer." ECF 27-1 at 5. Larson proceeds *pro se* which requires this Court to construe her Amended Complaint liberally, "however inartfully pleaded" and hold her to a less stringent standard than that which applies to attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, at 106 (1976)). The Court declines to dismiss a *pro se* complaint simply because it is long and, at times, confusing. Nevertheless, the Court cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)

("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). *See also Bell v. Bank of Am., N.A.*, No. RDB–13–0478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obligated to ferret through a [c]omplaint that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised."). With these principles in mind, the Court reviews Larson's claims.

### A. Wrongful Foreclosure (Counts I and V)

Larson alleges that Rosenberg and Nationstar took steps to foreclose wrongfully on the Property, that she was not properly served with notice of the foreclosure action, and that Defendants and their agents made false representations in affidavits. Larson asserts that these actions amounted to a "wrongful fraudulent and tortious attempted foreclosure," (Count I) and "wrongful foreclosure violations of [several Maryland foreclosure regulations]" (Count V).

This Court has previously determined that no such claim for "Wrongful Foreclosure" exists in Maryland. *Davis v. Wilmington Fin., Inc.*, No. PJM 09-1505, 2010 WL 1375363, at *7 (D. Md. Mar. 26, 2010). Moreover, no foreclosure sale took place, and Plaintiff still occupies the Property. *See id.* Accordingly, Plaintiff's claim fails as a matter of law.

### B. Predatory Loan Servicing (Count III)

In Count III, Larson avers that Defendants have engaged in predatory loan servicing by "perpetrat[ing] a scam" whereby "they put fraudulent sums of money on my mortgage" and then attempted to foreclose on her property. ECF 24-1 at 13. Larson further alleges that Defendants have "lied and perpetrated frauds on this Plaintiff with phony mathematics, phony balances, and

4

phony items which they say are due on the loan, but which are NOT DUE on the loan." *Id.* at 12 (emphasis in original). This claim likewise fails. "'Predatory lending' is a term that describes 'abusive practices in home mortgage lending.' To state a predatory lending claim, the plaintiff must allege the specific law violated by the defendant's predatory behavior." *Sucklal v. MTGLQ Inv'rs LP,* No. WDQ-10-1536, 2011 WL 663754, at *4 (D. Md. Feb. 14, 2011) (citation omitted). *See also Davis*, 2010 WL 1375363, at *7 (finding that "vague allegations and labels of 'predatory lending' are insufIficient to withstand a motion to dismiss."). Larson has not provided any specific laws that Defendants had violated in connection with the foreclosure proceedings. Nor has Larson alleged facts which raise her right to relief "above a speculative level." *Twombly*, 550 U.S. at 555. This claim, too, must be dismissed.

### C. "Loss Mitigation Violation" (Count IV)

Larson alleges that Defendants "engaged in omitting and withholding the Loss Mitigation Program from this Plaintiff's foreclosure process." ECF 24-1 at 17. Larson avers that Defendants should have presented her with alternatives to foreclosure, and specifically should have offered her the opportunity to participate in "Mortgage Modification" and "Partial Claim" programs. *Id.* at 18. The Court knows of no legally cognizable cause of action arising from the mere failure to provide a mortgagee with a loss mitigation program. Nor can the Court discern any private cause of action stemming from the FHA implementing regulations or Maryland Real Property provisions to which Larson refers. ECF No. 24-1 at 19-20. *See Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 719 (2007) (Fair Housing Act regulations "do not control directly the relationship between the mortgagor and mortgagee and may not be invoked by the mortgagor as a sword in an offensive cause of action against the mortgagee."). This claim also fails.

### D. FDCPA Violations (Count VI)

Larson alleges that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, because on May 31, 2016, Defendants added a new alleged default balance to her mortgage "out of nowhere." ECF 24-1 at 28. Larson's claim, however, is time-barred. An FDCPA claim must be brought within one year measured "from the date of the first violation, and subsequent violations of the same type do not restart the limitations period." *McGhee v. JP Morgan Chase Bank, N.A.*, No. DKC 12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013) (quoting *Fontell v. Hassett,* 870 F. Supp. 2d 395, 404 (D. Md. 2012)). Because Larson's alleged FDCPA violation occurred on May 31, 2016, and she filed suit on January 19, 2018, well beyond the one-year limitations period, the claim will be dismissed. [2]

### E. RESPA Violations (Count VII)

Larson next brings a claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617, based on Defendants' alleged failure to respond to three letters she sent to Defendants regarding the "fraudulent" default balance added to her account in May of 2016.[3] RESPA imposes a duty on loan servicers to respond to certain consumer inquiries. *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018). Under RESPA, the servicer of a federally related mortgage loan must acknowledge receipt of a Qualified Written Request ("QWR") within five business days of having received the QWR. 12 U.S.C. § 2605(e)(1)(A) (2018); 12 C.F.R. § 1024.35(d) (2014). Within thirty business days of receipt, "the servicer must: (1) make corrections to the borrower's account; (2) after conducting an investigation,

---

[2] Larson concedes that her claim is time-barred but nonetheless brought the claim because "[e]ven though I cannot be compensated with statutory remedies, I have no idea if there are any other remedies that may be recovered in this case." ECF No. 24-1 at 35. This Court can discern no other non-statutory remedies available to her under the FDCPA.

[3] Although the Amended Complaint at times refers to four letters, the Court can only identify three such letters. Larson also attaches only three letters to her Complaint, which this Court incorporates into the Amended Complaint. ECF Nos. 2-23 to -25.

provide a written explanation stating the reasons the servicer believes the account is correct; or (3) conduct an investigation and provide the information requested by the borrower or an explanation of why the information is unavailable." *Barr,* 303 F. Supp. 3 at 417 (citing 12 U.S.C. § 2605(e)(2)). RESPA authorizes a plaintiff to recover actual damages in the event a servicer fails to comply with these requirements. 12 U.S.C. § 2605(f)(1)(A). *See also Thomas v. Ocwen Loan Servicing, LLC*, No. ELH-17-218, 2017 WL 2645721, at *6 (D. Md. June 19, 2017).

The Court assumes without deciding that Larson's three letters qualified as QWRs. Fatal to Larson's claim, however, is her failure to identify any damages flowing from the Defendants' purportedly insufficient responses. *Ayres v. Ocwen Loan Servicing*, LLC, 129 F. Supp. 3d 249, 266 (D. Md. 2015). Larson avers that she sent three letters to Nationstar requesting an accounting for the "mysterious sums of money" placed on Plaintiff's account, and that Nationstar "defied the requests, and never answered the requests to justify or validate that sum alleged due and payable." ECF 24-1 at 38. Larson alternatively concedes that Nationstar answered her letters on at least two occasions, but argues that the explanation was "unclear and unsatisfactory." *Id.* at 40. Regardless, Larson does not demonstrate how Nationstar's unsatisfactory responses caused legally cognizable damages. *Ayres*, 129 F. Supp. 3d at 266 n.24; *Minson v. CitiMortgage, Inc.*, No. DKC 12-2233, 2013 WL 2383658, at *5 (D. Md. May 29, 2013). Larson's asserted "distress" arising from the inquiry concerning her account (ECF 24-1 at 38) will not suffice.[4] Furthermore, punitive damages which Larson seeks are not available

---

[4] Although Larson also seeks statutory damages under RESPA (ECF No. 24-1 at 41), she has not pleaded sufficient facts to support entitlement to statutory damages for "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f). Larson acknowledges that Nationstar responded to her first two letters with the explanations she had requested, although she contends the explanations are not sufficiently detailed. ECF No. 24-1 at 40. Assuming without deciding that Nationstar's failure to respond to Larson's third letter asking again for more detail was a RESPA violation, "[n]o pattern or practice can be drawn from a one-time occurrence*." Galante v. Ocwen Loan Servicing LLC*, No. CIV 13-1939, 2014 WL 3616354, at *34 (D. Md. July 18, 2014); *Nash v. PNC Bank, N.A.*, No.

under RESPA. *See, e.g., Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 319 (M.D.N.C. 2002). Accordingly, Count VII is also dismissed.

### F. Federal and State Unfair and Deceptive Trade Practices (Count VIII)

Adding to the panoply of federal statutory claims, Larson next alleges that Defendants violated the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, by engaging in "unfair practices" that added a "mysterious sum" to Plaintiff's mortgage. ECF No. 24-1 at 43. The FTC Act, however, does not allow for a private cause of action. *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2011 WL 3476994, at *13 (D. Md. Aug. 8, 2011). Consequently, Plaintiff's claim under the FTC Act can go no further.

Larson also alleges that Defendants violated the Maryland Consumer Protection Act ("MCPA"), which also protects against unfair and deceptive trade practices. *See* Md. Code Ann., Com. Law § 13–301. A private right of action is afforded under § 13–408 of the MCPA where a plaintiff demonstrates (1) an unfair or deceptive practice or misrepresentation (2) on which the plaintiff relied (3) and causes actual injury. *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*. 528 F. App'x 297 (4th Cir. 2013). Because Larson's claims under the MCPA sound in fraud, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply. *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009). Rule 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.". *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249 (D. Md. 2000). Particularity includes the "time, place, speaker, and contents of the allegedly false acts or statements." *Id.* at 250.

---

TDC-16-2910, 2017 WL 1424317, at *7 (D. Md. Apr. 20, 2017) ("a single allegedly deficient letter does not establish a 'pattern or practice' of noncompliance.'"); *Moore v. Mortg. Elec. Registration Sys., Inc.*, 848 F. Supp. 2d 107, 122 (D.N.H. 2012) (the failure of mortgage servicer "to respond to the [mortgagees'] two letters does not make out a pattern or practice of noncompliance with RESPA."); *In re Maxwell*, 281 B.R. 101, 123 (Bankr. D. Mass. 2002) ("just two violations" insufficient to establish a pattern or practice).

Larson contends that Defendants' non-specific "deception" constitutes an MCPA violation. ECF No. 24-1 at 47. Plaintiff provides no more particular facts than claiming that the Defendants deceived her by representing that certain "fees" on her mortgage were "due and payable." ECF No. 24-1 at 46. In this respect, the Amended Complaint falls woefully short of the requirement to plead with particularity such material misrepresentations. Although Larson spills much ink discussing the MCPA generally and other cases in which it may have been invoked, she does not aver any facts that allow the Court to infer plausibly that an MCPA violation occurred here. This claim is dismissed.

### G. Violations of the Mortgage Fraud Act (Count IX)

Larson next alleges that Defendants violated the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Property § 7–402, by posting fraudulent default balances to her account. Section 7-402 prohibits a knowing and deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party. *Id*. §§ 7–401(d)(1)-(3). Accordingly, an MMFPA violation must be pleaded with particularity as required in Rule 9(b). Because Plaintiff has "alleged no facts evincing that Defendant[s] had knowledge of the statements' falsity or intent to defraud," Plaintiff has fallen short of this pleading requirement. *Zervos v. Ocwen Loan Servicing, LLC*, No. 1:11-CV-03757-JKB, 2012 WL 1107689, at *5 (D. Md. Mar. 29, 2012). This claim, too, must be dismissed.

### H. Breach of Contract (Count X) and Intentional and Negligent Infliction of Emotional Distress (Count XI)

Finally, Larson alleges claims of breach of contract and intentional and negligent infliction of emotional distress.[5] To prevail on a breach of contract claim under Maryland law, "a [P]laintiff must prove that the Defendant owed the Plaintiff a contractual obligation and that the [D]efendant breached that obligation." *Davis*, 2010 WL 1375363, at *6 (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 776 A.2d 645, 651 (2001)). Larson invokes numerous mortgage related laws, but has failed to identify any specific contractual provision, term or obligation that Defendants owed to her and also breached. Merely asserting that a contract was breached when Defendants erroneously initiated foreclosure proceedings is not enough to survive dismissal. ECF No. 24-1 at 64. Accordingly, the contract claim fails.

As to negligent infliction of emotional distress, no such cause of action is recognized in Maryland. *Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000). Larson's claim in that respect is easily dismissed.

With regard to intentional infliction of emotional distress (IIED), Larson avers that because the Defendants placed a "mysterious amount of money" on Plaintiff's mortgage statement in retaliation for her having thwarted their foreclosure action, she has suffered from "sleepless nights, and fighting dread, and depression, and mental distress and anguish, and despair, anxiety, and fear of losing the family home, and stress and grief." ECF No. 24-1 at 69-70. Although the Court does not doubt the sincerity of Larson's anguish, it is simply not sufficient to allow the IIED claim to proceed.

---

[5] Plaintiff refers to a composite tort of "Intentional and Negligent Infliction of Emotional Distress." For the purposes of analysis, the Court separates this count.

IIED is reserved for only the most extreme and outrageous conduct that causes the plaintiff severe emotional distress. *See Batson v. Schiflett*, 325 Md. 684, 733–34 (1992); *Hussy v. Hous. Auth. of Baltimore*, No. CCB-17-2841, 2018 WL 1947049, at *4 (D. Md. Apr. 24, 2018) ("Maryland has been clear that liability for the tort of intentional infliction of emotional distress should be imposed sparingly." (internal quotation marks and citation omitted)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Batson*, 325 Md. at 733 (quoting *Harris v. Jones*, 281 Md. 560, 567 (1977)). "[T]he tort . . . exists only to remedy the most outrageous and intolerable behavior." *Hussy*, 2018 WL 1947049, at *4. To plead a sufficient IIED claim, the plaintiff must aver (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) which causes the plaintiff emotional distress; (4) that is severe. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris*, 281 Md. at 566). "[A]n IIED claim is subject to a heightened pleading standard, and each element of the claim must be 'pled with specificity.'" *English v. Ryland Mortg. Co.*, No. GJH-16-3675, 2017 WL 3475674, at *6 (D. Md. Aug. 11, 2017) (citation omitted).

Larson has pleaded no facts by which this Court could infer much beyond general stress and anxiety associated with having participated in foreclosure proceedings. *See Asafo-Adjei v. First Sav. Mortg. Corp.*, No. RWT 09CV2184, 2010 WL 730365, at *5 (D. Md. Feb. 25, 2010) ("[T]he Court cannot imagine *any* set of facts surrounding a mortgage transaction that would support an inference of extreme and outrageous conduct." (emphasis in original)). This is not the case in which IIED, reserved only for the most extraordinary and outrageous situations, may proceed. Count XI is dismissed.

## IV. Motion to File Surreply

Larson seeks leave to file a surreply because she wants the final word on the motions, and to supplement her amended complaint. ECF No. 33. Plaintiff has responded at length to Defendants' motions to dismiss. *See* ECF Nos. 18, 21, 29, 30. Because "surreplies are disfavored in this District, and the surreply would not alter the Court's analysis," the motion is denied. *Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013).

## V. Conclusion

For the foregoing reasons, Defendants Rosenberg and Nationstar's motions to dismiss are GRANTED, Plaintiff's motion to file an amended complaint is GRANTED, and Plaintiff's motion for leave to file a surreply is DENIED. A separate Order follows.

11/13/2018                                                        /S/
Date                                                               Paula Xinis
                                                                       United States District Judge